UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| GEORGE JUNIOR ANDERSON, | ) | |
| LAURIE ANDERSON, a/k/a | ) | |
| LAURIE BLAKE | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.  1:15-cv-14187-PBS |
| | ) | |
| NATIONSTAR MORTGAGE, LLC, | ) | |
| CAPITAL ONE, N.A., | ) | |
| Defendants. | ) | |

## <u>MEMORANDUM IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS</u>

## I.    <u>INTRODUCTION</u>

This action is the second that Plaintiffs George Anderson ("George") and Laurie

Anderson ("Laurie") (collectively, "Plaintiffs") have filed this year to challenge foreclosure on

the property located at 10 Huckleberry Lane, Randolph, Massachusetts (the "Property"), and like

the first, it fails to state any plausible claims.  Plaintiffs made no mortgage payments for the past

several years for the Property and accumulated an arrearage of well over one hundred thousand

dollars in the process.  Not only have the courts generally conclusively resolved the challenges

Plaintiffs assert here, but also as to some of these challenges, Plaintiffs in fact present the Court

with allegations that are not true, which is readily demonstrable by matters of public record.

Plaintiffs raise six implausible Counts challenging an August 4, 2015 foreclosure sale on

the Property, and a seventh (for Quiet Title) that likewise fails because it is predicated upon the

prior six for its validity.  In Count I, Plaintiffs, having received notices of acceleration and a

scheduled foreclosure sale, claim such notices were invalid because they supposedly had to be

sent by the "Lender" under the Mortgage.  This interpretation of the Mortgage is incorrect as a

matter of law, as copious authority has found.  In Count II, Plaintiffs seek to void the sale

pursuant to G.L. c. 244, § 15A, by alleging notice of the sale was not timely later provided to municipal tax, water and sewer authorities.  This is a *post*-foreclosure requirement, however, and it is not part of the statutory power of sale.  In Count III, Plaintiffs assert that the sale is invalid for alleged deficiencies in a Servicemembers Civil Relief Act proceeding.  As the SJC has held, such proceeding is likewise not part of the power of sale, and Plaintiffs, who are not military members, have no basis to challenge it.  In Count IV, Plaintiffs seemingly bring challenges pursuant to both G.L. c. 244, § 35A, as well as Paragraph 22 of their Mortgage, contesting provision to them of a notice of default and right to cure prior to acceleration.  Plaintiffs, however, do not even allege facts to suggest how any supposed error was so fundamentally unfair as to prevent them from cure.  Indeed, the primary decision on which Plaintiffs rest with regard to this mortgage provision expressly had only prospective application, and does not apply here.  In Counts V and VI, Plaintiffs assert that a required affidavit was not filed with the registry pursuant to G.L. c. 244, §§ 35B, 35C, even though the affidavit that was in fact filed is a matter of public record.  Section 35B is furthermore not even applicable to this action.

In addition, all claims brought by Laurie should be dismissed for lack of standing because she has no interest in the Property in any event.  She and George divorced roughly eight years ago, and pursuant to their agreement, she explicitly conveyed any interest she might have had in the Property by Quitclaim Deed to George in 2012.  Pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6), Defendants Nationstar Mortgage LLC ("Nationstar") and Capital One, N.A. ("Capital One") (collectively, "Defendants") respectfully request that this action be dismissed.

## II.    PROCEDURAL POSTURE

By Complaint dated October 26, 2015, Plaintiffs commenced this action in the Norfolk County Superior Court.  On or about November 24, 2015, Defendants were served with the

Complaint.  On December 21, 2015, Defendants filed a Notice of Removal to remove this action

to the United States District Court for the District of Massachusetts.

### III.   FACTS[1]

1.      By Massachusetts Quitclaim Deed (the "Deed") dated February 22, 2005, and

filed on February 24, 2005 with the Norfolk County Registry District of the Land Court

("Registry District") as Document 1,055,561 on Transfer Certificate of Title No. 169637, dated

February 24, 2005, Plaintiffs took title to the Property.  A copy of the Deed, as filed with the

Registry District, is attached as **Exhibit "A."**[2]

2.      In June 2005, Plaintiffs refinanced their interest in the Property.  On June 3, 2005,

Laurie Anderson executed a promissory note, in the original principal amount of **$381,600** (the

"Note").  A copy of the Note is attached as **Exhibit "B."**[3]  The Lender on the Note was Lehman

Brothers Bank, FSB ("Lehman").

3.      Likewise on June 3, 2005, Plaintiffs executed a Mortgage on the Property (the

"Mortgage"), which secured the Note.  *See* Compl. ¶ 15.  A copy of the Mortgage, which was

filed on December 15, 2005 with the Registry District as Document 1,088,759, is attached as

**Exhibit "C."**  *See id.* ¶ 10.  The Mortgagee to the Mortgage was MERS, as nominee for Lehman

and its successors and assigns.  *See id.*

4.      By Corporate Assignment of Mortgage dated December 26, 2008, and filed with

the Registry District as Document 1,166,024 on January 8, 2009 (the "First Assignment"),

---

[1] The facts here are generally drawn from the Complaint, except where contradicted by the documents properly
considered on the Rule 12(b)(6) posture.  These facts are only assumed to be true for the purposes of this motion.
[2] The Court may properly consider publicly-filed instruments for the purposes of a Rule 12(b)(6) motion.  *See
generally Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014) (court may "take into account . . .
matters of public record, and other matters susceptible to judicial notice") (citations omitted).
[3] It is likewise proper for the Court to consider this document on a Rule 12(b)(6) posture because it is "sufficiently
referred to in the complaint."  *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993).  *See, e.g.*, Compl. ¶ 10
(referencing the Mortgage securing the Note).

MERS assigned the Mortgage to Aurora Loan Services LLC ("Aurora").  *See id.* ¶ 11.  A copy of

the First Assignment is attached as **Exhibit "D."**

5.       By February 24, 2009, Plaintiffs were in arrears on the Note and Mortgage in an

amount of $18,450.36, due for payments due from July 1, 2008 onward.  Accordingly, Aurora,

the contemporary mortgagee of record and servicer for the loan, sent Plaintiffs a letter dated

February 24, 2009, pursuant to G.L. c. 244, § 35A and Paragraph 22 of the Mortgage, notifying

them of their default and that if their arrears were not cured, the debt might be accelerated.  A

copy of this letter is attached as **Exhibit "E."**[4]

6.       By Corporate Assignment of Mortgage dated June 5, 2012, and filed with the

Registry District as Document 1,262,324 on August 31, 2012 (the "Second Assignment"),

Aurora assigned the Mortgage in turn to Nationstar.  *See* Compl. ¶ 13.  A copy of the Second

Assignment is attached as **Exhibit "F."**

7.       In or about 2007, Laurie and George divorced one another.  By Judgment of

Divorce Nisi dated December 5, 2007, in an action in the Norfolk County Probate and Family

Court Department of the Massachusetts Trial Court, with civil action number 07D 1220-DV1,

Judgment entered, incorporating an Agreement of the parties dated November 5, 2007.  In that

Agreement, Laurie agreed to relinquish all interest to the Property.  This publicly-filed Judgment

and accompanying Agreement are attached as **Exhibit "G."**[5]

8.       Pursuant to the Agreement in their divorce proceedings, by Quitclaim Deed (the

"Second Deed") dated October 12, 2012, and filed on October 30, 2012 with the Registry

District as Document 1,267,504 on Transfer Certificate of Title No. 185500, dated October 30,

---

[4] This pre-acceleration notice is likewise "central to plaintiffs' claim" and "sufficiently referred to in the complaint." *See Watterson*, 987 F.2d at 3-4 (citations omitted);  *see also* Compl. ¶¶ 22-23, 59-60.
[5] The Court may likewise take judicial notice of these public proceedings as well.  *See, e.g.*, *White v. Gittens*, 121 F.3d 803, 805 (1st Cir. 1997).

2012, Laurie conveyed all of her interest in the Property to George.  A copy of the Second Deed, as filed with the Registry District, is attached as **Exhibit "H."**  In the Second Deed, Laurie likewise confirmed that she no longer resided at the Property, but now lived in Quincy, MA.

9.      On August 17, 2013, Nationstar completed an Affidavit Regarding Note Secured by a Mortgage to be Foreclosed, which was filed on September 20, 2013 with the Registry District as Document 1,293,757.  A copy of this Affidavit, as filed with the Registry District, is attached as **Exhibit "I."**  In this Affidavit, Nationstar attested that G.L. c. 244, § 35B was not applicable to the Mortgage, and that Nationstar was the authorized agent of the holder of the Note for the purposes of foreclosing the Mortgage.

10.      Plaintiffs' default continued, and a date for foreclosure sale of the Property was scheduled for April 1, 2015, and then rescheduled for August 4, 2015.  *See* Compl. ¶¶ 15, 17.

11.      By Foreclosure Deed dated September 11, 2015, and filed on September 22, 2015 with the Registry District as Document 1,338,369 on Transfer Certificate of Title No. 191855, dated September 22, 2015, Nationstar conveyed the Property to Capital One, N.A.  *See id.* ¶ 17. A copy of the Foreclosure Deed, as filed with the Registry District with attached Exhbits, is attached as **Exhibit "J."**

## IV.     <u>ARGUMENT</u>

### A.     STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual material . . . to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 559 (2007)).  "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (quoting *Twombly*, 550 U.S. at 557)

(internal quotation omitted).  "In conducting this review, [a court] disregard[s] 'statements in the complaint that merely offer legal conclusions couched as fact or threadbare recitals of the elements of a cause of action.'"  *Lemelson v. U.S. Bank N.A.*, 721 F.3d 18, 21 (1st Cir. 2013) (citations omitted).  "Dismissal for failure to state a claim is appropriate 'if the complaint does not set forth factual allegations . . . respecting each material element necessary to sustain recovery under some actionable legal theory.'"  *Id.* (citation omitted).

"The plaintiff's factual allegations are ordinarily assumed to be true in passing on the adequacy of the complaint . . . , [b]ut 'ordinarily' does not mean 'always':  some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'"  *Peñalbert-Rosa v. Fortuño-Burset*, 631 F.3d 592, 595 (1st Cir. 2011).  Even when a plaintiff makes what is "patently a *factual* claim," for the purposes of a motion to dismiss under Fed.R.Civ.P. 12(b)(6), it is still "inadequate absent more specific factual assertions" when it simply constitutes a "bare allegation" of fact.  *Id.* (emphasis in original) (citing *Iqbal*, 556 U.S. at 681).[6]

In deciding a Rule 12(b)(6) motion, a court may consider "documents central to plaintiffs' claim [and] documents sufficiently referred to in the complaint."  *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993).  A court may "also take into account . . . matters of public record, and other matters susceptible to judicial notice."  *Wilson v. HSBC Mortg. Servs., Inc.*, 744 F.3d 1, 7 (1st Cir. 2014) (citations omitted).  "When such documents contradict an allegation in the complaint, the document trumps the allegation."  *Lowenstern v. Residential Credit Solutions*, Civ. No. 11-11760-MLW, 2013 WL 697108, at *3 (D. Mass. Feb. 25, 2013) (citing *Clorox Co.*

---

[6] "If the factual allegations in the complaint are too meager, vague or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal."  *S.E.C. v. Tambone*, 597 F.3d 436, 442 (1st Cir. 2010) (en banc).  The Rule 12(b)(6) standard "does not mean . . . that a court must (or should) accept every allegation made by the complainant, no matter how conclusory or generalized."  *U.S. v. AVX Corp.*, 962 F.2d 108, 115 (1st Cir. 1992).

*P.R. v. Proctor & Gamble Consumer Co.*, 228 F.3d 24, 32 (1st Cir. 2000));  *see also Young v.*

*Wells Fargo Bank, N.A.*, 717 F.3d 224, 232-33 (1st Cir. 2013) (same) (citation omitted).

## B.      PLAINTIFFS' FAILURE TO PLEAD A PLAUSIBLE BASIS FOR RELIEF ON ALL OF THEIR CHALLENGES TO THE FORECLOSURE PROCESS

1.      Plaintiffs misconstrue the operative Mortgage to believe that only the "Lender" may exercise the statutory power of sale.

The first challenge that Plaintiffs raise to the foreclosure process in this action, in Count

I, is titled "Mortgage Power of Sale" (presumably pursuant to G.L. c. 183, § 21).  In Count I,

Plaintiffs contend that by their Mortgage, only the "Lender" could supposedly provide them with

a pre-acceleration notice, as well as notice and publication of the foreclosure sale.  *See* Compl. ¶

23.  Because Nationstar, the mortgagee of record and mortgage servicer, *see id.* ¶¶ 13, 24, gave

such notice and publication of the sale, and not Capital One, which Plaintiffs term as the

"Lender," Plaintiffs believe that the foreclosure is void.  *See id.* ¶¶ 24-29.  As multiple Courts

have found, though, Plaintiffs misinterpret the plain language of the Mortgage.

Paragraph 22 of the Mortgage, which is standard language, states in relevant part:

> Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument . . . .   If the default is not cured . . . Lender at its option may demand immediate payment . . . and may invoke the STATUTORY POWER OF SALE . . . .

The Mortgage also provides the following language earlier on Page 3 (with emphasis added):

> MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the property; ***and to take any action required of Lender*** . . . .[7]

What Plaintiffs apparently propose is that Paragraph 22 only allows the "Lender," or note

owner (and not the mortgagee, or the servicer) to send foreclosure notices.  Plaintiffs ignore not

only the plain language allowing MERS, as mortgagee, and its successors and assigns, to "take

---

[7] Moreover, Paragraph 13 of the Mortgage states: "[t]he covenants and agreements of this Security Instrument shall bind     . . . and benefit the successors and assigns of Lender."

any action required of Lender," but also the frequent references to MERS' nominee relationship with not just the Lender but also any of the Lender's successors and assigns.

Courts that have considered such a contention have generally rejected it as a matter of law.  In *Armand v. Homecomings Fin. Network Inc.*, Civ. No. 12-10457-LTS, 2012 WL 2244859, at *5 (D.Mass. June 15, 2012), the Court held as follows:

> Plaintiff contends that the Mortgage permits only the Lender to invoke a statutory power of sale on the theory that the language of the second paragraph of numbered paragraph 22 authorizes the 'Lender,' but not successors or assigns, to invoke the statutory sale remedy.   However, the Mortgage also provides 'Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property . . . .'  Plainly, this language authorizes MERS and MERS' successors and assigns to execute the power of sale. The Complaint fails to state a claim for relief that, on this theory, [the assignee mortgagee] lacked authority to conduct the foreclosure sale.

Likewise, in *Galvin v. U.S. Bank N.A.*, the Court held "by a plain reading of the mortgage[,] Paragraph 22 does not require the lender to personally send the default notice."  Civ. No. 14-14723-RGS, 2015 WL 1014549, at *4 (D.Mass. Mar. 9, 2015) ("the mortgage servicer . . . as such was authorized to act on behalf of the lender") (citing *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 187 (1st Cir. 2006)).[8]  In *FNMA v. Rogers*, the court similarly found an argument "that paragraph 22 of the mortgage instrument required the 'Lender' . . . to give [the borrower] notice of any default and right to cure" was "a nonsensical interpretation serving no apparent purpose."  No. 13-ADMS-10025, 2015 WL 2000845, at *3 (Mass.App.Div. Apr. 7, 2015).

As further persuasive authority, the Supreme Court of Rhode Island has rejected this same contention.  In *Bucci v. Lehman Bros. Bank, FSB*, the Court held that "[t]hese provisions are clear and leave no room for interpretation.  The plaintiffs explicitly granted the statutory

---

[8] *See also Eaton v. FNMA*, 462 Mass. 569, 586 (2012) ("There is no applicable statutory language suggesting that the Legislature intended to proscribe application of general agency principles in the context of mortgage foreclosure sales.").  If a party can act as the agent of a note owner to foreclose, *see id.*, it can also send foreclosure notices.

power of sale and the right to foreclose to MERS, and consequently, MERS has the contractual authority to exercise that right."  68 A.3d 1069, 1081 (R.I. 2013).  As in *Bucci*, the Plaintiffs here simply focus on the "later provision in the mortgage that empowers the 'Lender' to invoke the statutory power of sale," but this "subsequent provision [does] not negate the previous language in the Mortgage . . . ."  *Id.*;  *see also Mruk v. MERS, Inc.*, 82 A.3d 527, 538 (R.I. 2013).[9]

Here, Aurora was able to send the pre-acceleration notice on February 24, 2009, *see* Ex. E, and Nationstar was able to provide notice and publication of the foreclosure sale in March 2015, *see* Compl. ¶ 24;  *see also* Ex. J, both because they were the contemporary servicers (and agents) for the note owner, but also because they were the contemporary mortgagees of record as well.  On February 24, 2009, Aurora was the mortgagee of record, having been assigned the Mortgage from MERS on December 26, 2008.  *See* Ex. D.  In March 2015, Nationstar was the mortgagee of record, having been assigned the Mortgage from Aurora on June 5, 2012.  *See* Ex. F.  The plain language of the Mortgage allows MERS, as mortgagee and nominee for the Lender and the Lender's successors and assigns to take *any action required of Lender* (including sending these notices).  *See Bergeron v. N.Y. Community Bank*, 121 A.3d 821, 826 (N.H. 2015) ("the language of the Mortgage alone conclusively establishes an agency relationship between the defendant, as assignee of MERS, and any downstream assignee of [the originating Lender] that held the Note at the commencement of foreclosure") (citation and internal quotation omitted).  The same is true for any assignee of MERS as mortgagee, such as Aurora and then Nationstar.  *See Mruk*, 82 A.3d at 538 ("when MERS assigned its interest in the mortgage to [the assignee], [the assignee] acquired all the rights which MERS possessed") (citation omitted).  Because a mortgagee or servicer may provide notices per the Mortgage, Count I states no plausible claim.

---

[9] The *Bucci* Court "interpret[ed] the term 'mortgagee' in [its] statutes in a similar fashion as did the Supreme Judicial Court of Massachusetts."  68 A.3d at 1086-87 (citing *Eaton*, 462 Mass. at 586).

      2.    Plaintiffs incorrectly assert that G.L. c. 244, § 15A is part of the power of sale so that a foreclosure may be voided for lack of strict compliance.

Plaintiffs' Count II, under G.L. c. 244, § 15A, fails because Section 15A is not part of the statutory power of sale, such that an alleged violation could void a foreclosure.  In Paragraphs 37-39 of the Complaint, Plaintiffs allege that the Defendants did not notify certain municipal tax, water and sewer authorities of the foreclosure sale "within 30 days of conveying title of said conveyance."[10]  Because such notifications are required under G.L. c. 244, § 15A, Plaintiffs contend that the foreclosure sale is void because "[f]ailure to comply with any of the above statutes set forth in" "G.L. [c.] 244, §§ 11-17C" "voids a foreclosure sale."  *See* Compl. ¶¶ 32-33.  Plaintiffs, however, misinterpret dictum from the Supreme Judicial Court in coming to this conclusion.  The SJC could not have found strict compliance with every provision of G.L. c. 244, §§ 11-17C to be required, because it has actually held directly to the contrary.

G.L. c. 244, § 15, a statute requiring the mortgagee to file an affidavit with the registry recounting compliance with the statutory power of sale, is a statute within that same enumerated list.  And yet, following long-settled case law, the SJC expressly held in *FNMA v. Hendricks* that "a deficient affidavit of sale [pursuant to G.L. c. 244, § 15] ***does not void a foreclosure sale*** or the right to possession."  463 Mass. 635, 637 (2012) (emphasis added) (citing *Burns v. Thayer*, 115 Mass. 89, 93 (1874)).  As the SJC explained, Section 15 was only evidentiary in character, providing a means to "make a prima facie showing" of compliance with the statutory power of sale, without ***itself*** actually comprising a part of that same power.  *Id.* at 637, 641-42.

Multiple additional statutes within that range, including Section 15A, could not logically be thought part of the power of sale, including Sections 14A (requiring the division of banks to maintain a foreclosure database), 17A (establishing a two-year statute of limitations to collect a

---

[10] While Plaintiffs' wording is somewhat awkward, Defendants assume Plaintiffs are alleging that these notifications did not take place within 30 days of the foreclosure.

post-foreclosure deficiency) and 17B (determining no action *for deficiency* following a valid foreclosure sale may take place absent notice).[11]  Indeed, the plain language of G.L. c. 244, § 15A (with emphasis added) itself requires the mortgagee to provide these agencies with notice of "***conveying title***" "within thirty days of . . . ***conveying title*** . . . ."  In other words, the text of the statute itself assumes title has already been conveyed pursuant to the power of sale, and even the obligations that it imposes logically cannot exist until a valid foreclosure under the power of sale has already transpired.  For Plaintiffs to challenge the foreclosure on this basis is paradoxical.

When the SJC has cited this range of statutes, it has been in dictum, as referencing the statutes "relating" to the power of sale, because what the holdings have in truth rested upon is compliance with G.L. c. 183, § 21 and G.L. c. 244, § ***14***, which the Court has always termed the actual focal points to the power of sale.  *Eaton v. FNMA*, 462 Mass. 569, 581, 584 (2012) and *U.S. Bank N.A. v. Ibanez*, 458 Mass. 637, 646, 650-51 (2011) both fundamentally concerned what it meant to be the mortgagee with the right to foreclose under G.L. c. 183, § 21 and G.L. c. 244, § 14.  Likewise, in *U.S. Bank N.A. v. Schumacher*, the holding was that G.L. c. 244, § 35A was *not* part of the power of sale, not that other sections *were*.  467 Mass. 421, 431 (2014).

Accordingly, the proper view of Section 15A is that it is not part of the power of sale, but rather a *post*-foreclosure requirement.  This is the approach taken by the Superior Court in *Blue Mountain Homes, LLC v. Bruno*, HDCV2013-00679 (Mass.Super.Ct. Nov. 20, 2014).[12]  It was also the view of the Superior Court in *Turra v. Deutsche Bank Trust Co. Americas*, MICV2013-01788, which is presently on appeal before the Appeals Court, 2014-P-1743.  Because Section 15A is not part of the statutory power of sale, Count II fails to state a plausible claim.

---

[11] *See Bank of N.Y. v. Bailey*, 460 Mass. 327, 329 n.7 (2011) (distinguishing between G.L. c. 244, § 17B, which the Court stated "governs the manner in which notice must be provided in an action for deficiency," from "G.L. c. 244, § 14, which sets forth the requirements of notice in connection with a foreclosure by sale").  Indeed, the notion of a "deficiency" is untenable without the predicate of prior partial recovery from a foreclosure sale.
[12] A copy of this unreported decision is attached as **Exhibit "K."**

3.      Plaintiffs incorrectly contend a purported violation of the Servicemembers Civil Relief Act can void a foreclosure sale as to non-military members, and do not even allege that they are members of the military.

Plaintiffs' Count III, for "Order of Notice," alleging certain supposed violations in Land Court proceedings under the Servicemembers Civil Relief Act ("SCRA"), fails because the SJC has directly held that such proceedings have no bearing upon the validity of a foreclosure sale.

As the Massachusetts Supreme Judicial Court has expressly held, SCRA proceedings are distinct from exercise of the statutory power of sale, and any alleged challenge to the standing of a party to such SCRA proceedings, or to the procedure of such an SCRA action, is not a proper basis upon which to contest a foreclosure under the power of sale.  SCRA proceedings are simply an optional preliminary step in which lenders obtain a determination that a borrower is not a member of the military—which Plaintiffs neither were, nor allege to have been—in light of a federal statute that generally prohibits foreclosures conducted during military service.  The Court in *HSBC USA, N.A. v. Matt* held that "[s]ervicemember proceedings 'occur independently of the actual foreclosure itself and of any judicial proceedings determinative of the general validity of the foreclosure.'"  464 Mass. 193, 196 (2013) (quoting *Beaton v. Land Court*, 367 Mass. 385, 390 (1975)).  "If a foreclosure were otherwise properly made, failure to comply with the [SCRA] would not render the foreclosure invalid as to anyone not entitled to the protection of that act."  *Id.* (brackets in original).  "Thus, a[n SCRA] proceeding is neither a part of nor necessary to the foreclosure process . . . ."  *Id.* at 197.  SCRA "proceedings, ***where nonservicemember defendants may not appear and be heard***, are not determinative of any issue beyond the extent of such defendants' rights under the SCRA, if any."  *Id.* at 204 (emphasis added) (citations omitted).  A mortgagee's "standing to maintain an [SCRA] proceeding" does not "in any way" speak to the ability to foreclose.  *See id.*

Any supposed challenge here premised on the SCRA proceedings is untenable in light of *Matt*. Plaintiffs' contention in Paragraph 46 of their Complaint that Judgment in the SCRA action was supposedly "necessary" to foreclose is incorrect when neither Plaintiff was a member of the military. Accordingly, the issue Plaintiffs appear to take in Paragraphs 47-49 of their Complaint that the Notice of Intent to Foreclose preceded by two days the Order of Notice in the distinct SCRA proceeding is wholly irrelevant. Regardless, Plaintiffs cannot dispute that prior to the August 4, 2015 foreclosure sale, Nationstar had already obtained a Judgment in the SCRA action, dated July 24, 2015, determining that neither Plaintiff was a member of the military. A copy of this Judgment, which is a matter of public record, is attached as **Exhibit "L."** In addition, Plaintiffs appear to protest in Paragraphs 50-53 of their Complaint that it was Nationstar, and not Capital One, that filed the SCRA Action.[13] The SJC made clear in *Matt* that "mortgagees or those acting on behalf of mortgagees have standing to bring servicemember proceedings." 464 Mass. at 203. Plaintiffs admit that at the time of filing the Order of Notice in March of 2013, Nationstar had been assigned the Mortgage several months earlier in June of 2012. *See* Compl. ¶¶ 13, 16. Both legally and factually, Count III fails as a matter of law.

> 4.   Plaintiffs cannot claim violations of G.L. c. 244, § 35A or Paragraph 22 of their Mortgage when they were sent the notice of acceleration in question, and likewise cannot rely upon authority with solely prospective effect.
>
>    a.   G.L. c. 244, § 35A

In Count IV of the Complaint, Plaintiffs allege conclusorily that "Lender Capital One, N.A. failed to send Plaintiffs' a statutory mandated notice of their right to cure their default pursuant to Mass. Gen. Laws c. 244 § 35A, as well as Paragraph 22 of the mortgage." The reason why this claim fails as a matter of law is because that notice is attached as Exhibit E to

---

[13] To the extent that Plaintiffs believe that only the "Lender" could do so under the Mortgage, they are incorrect for the reasons already noted *supra* with respect to Count I.

this Memorandum.  Dated February 24, 2009, it was sent by Aurora, the contemporary mortgagee of record and servicer for the loan.

Pursuant to the version of Section 35A in effect at the time of the notice, *see generally Stokes v. Wells Fargo Bank, N.A.*, 37 F.Supp.3d 525, 530-34 (D. Mass. 2014) (citing, *e.g.*, St. 2007, c. 206, § 11), this notice informed Plaintiffs of the default, a right to cure within ninety days, the fact that foreclosure could transpire absent cure, contact information by which to cure, the identity of the mortgage originator, and contact information for assistance from the Massachusetts Housing Finance Agency and Massachusetts Division of Banks.  When Plaintiffs not only do not attempt to show how this statute was supposedly violated, but in truth the notice actually did comply with the statute in all material respects, there is no claim as a matter of law.[14]

Also fatal to Plaintiffs' purported Section 35A claim is that they do not plead the required prejudice to assert a claim beyond conclusory statements absent actual factual allegations in support.  In *Schumacher*, the Supreme Judicial Court held that G.L. c. 244, § 35A is not part of the statutory power of sale, so that strict compliance with the statute is not required.  467 Mass. at 428-31;  *see also Haskins v. Deutsche Bank Nat. Trust Co.*, 86 Mass.App.Ct. 632, 637 (2014). This action is indeed brought after a foreclosure sale has already transpired, and so the Plaintiffs would have to "prove that the violation of § 35A rendered the foreclosure so fundamentally unfair that [they are] entitled to affirmative equitable relief . . . ."  *see Bank of N.Y. Mellon Corp. v. Wain*, 85 Mass.App.Ct. 498, 501 (2014) ("[I]n a postforeclosure action, it is not enough for the mortgagor merely to show some noncompliance with § 35A.") (quotation omitted).

At the very least, after *Schumacher*, and especially in a *post*-foreclosure suit, borrowers should be obligated to plead actual facts to show how a specific alleged violation of Section 35A

---

[14] *See also Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 78-79 (1st Cir. 2014) (affirming dismissal of Section 35A claim pled in wholly conclusory fashion).

prevented them from curing their arrearage.  Here, Plaintiffs do not even attempt to allege any actual facts to suggest how any supposed failing prevented them from curing their arrearage, which is the sole purpose of the statute.  *See Schumacher*, 467 Mass. at 431 ("§ 35A is designed to give a mortgagor a fair opportunity to cure a default . . . .").  A "deficiency in the notice [must be] substantial," and is immaterial when "[t]he notice provided the plaintiff with the information needed to cure or challenge the default."  *See Rubin v. Deutsche Bank Nat. Trust Co.*, No. 13-P-1347, 2014 WL 2532280, at *1 n.4 (Mass.App.Ct. June 6, 2014) (Rule 1:28 Decision).[15]

Plaintiffs allege conclusorily in Paragraph 62 of their Complaint that Defendants "deprived them of the opportunity to seek modification of their mortgage loan [or] short sale of the property," but these are just bare assertions.  *See Peñalbert-Rosa*, 631 F.3d at 595-96 ("sometimes a threadbare factual allegation bears insignia of its speculative character and, absent greater concreteness, invites an early challenge—which can be countered by a plaintiff's supplying of the missing detail").  As for the contention regarding a potential loan modification, Section 35A does not afford a borrower the right to seek a loan modification, only a period of time to cure.  *See generally Aragao v. MERS, Inc.*, 22 F.Supp.3d 133, 142-43 (D. Mass. 2014).  As to a short sale, which is a foreclosure prevention option by which a "lender agrees to allow the borrower to sell the home for less than what he owes on the mortgage," *see generally Foley*, 772 F.3d at 69 n.3, Section 35A simply has no bearing on this course of action whatsoever.

---

[15] "[T]o have a successful claim for any defect in the notice, the plaintiffs would have to plead and prove some actual prejudice **from the defect**."  *Coelho v. Asset Acquisition & Resolution Entity, LLC*, Civ. No. 13-10166-GAO, 2014 WL 1281513, at *3 (D.Mass. Mar. 31, 2014) (emphasis added).  A plaintiff who "do[es] not claim actual prejudice from any of the claimed deficiencies" states no claim as a matter of law.  *Id.* at *2.  A plethora of recent unreported decisions of the Massachusetts Appeals Court have moreover reiterated the importance of a showing of prejudice to state a claim under Section 35A.  *See generally Farmer v. FNMA*, No. 14-P-394, 2015 WL 2260023, at *3 (Mass.App.Ct. May 15, 2015) (Rule 1:28 Decision); *Wells Fargo Bank v. O'Neill*, No. 14-P-686, 2015 WL 2037434, at *1 & n.2 (Mass.App.Ct. May 5, 2015) (Rule 1:28 Decision); *FNMA v. Carvalho*, No. 14-P-628, 2015 WL 1809412, at *1 n.5 (Mass.App.Ct. Apr. 22, 2015) (Rule 1:28 Decision); *Collette v. Wells Fargo Bank, N.A.*, No. 14-P-702, 2015 WL 1487040, at *1 (Mass.App.Ct. Apr. 3, 2015) (Rule 1:28 Decision) (citing *Payne v. U.S. Bank, N.A.*, Civ. No. 11-10786-GAO, 2013 WL 5757858, at *2 (D.Mass. Oct. 24, 2013)).

What Plaintiffs nowhere allege anywhere in their Complaint, nor could they, is how they were in any way prevented from curing their arrearage.  They nowhere allege that they had the resources to cure their $18,450.36 arrearage in February 2009, let alone the present arrearage that accumulated in the ***more than six years*** since that time.  They nowhere allege that they attempted or sought to cure the arrearage.  They certainly make no showing of actual non-conclusory facts, even by allegation, that anything somehow prevented them from seeking a loan modification or short sale.  Indeed, the notice actually provides as follows on the second page:

> If you are unable to pay the total amount owed, please contact us immediately to discuss loan repayment options.  You may be eligible for certain workouts through our loss mitigation department, including repayment options.  Act now and call us immediately at 866-521-3828 to see if you qualify!

*See* Ex. E.  When Plaintiffs were sent a notice pursuant to G.L. c. 244, § 35A, they make no effort to allege how this notice failed to comply with the statute, and they certainly do nothing to demonstrate how they were prejudiced in any way by this notice, a challenge to the foreclosure process premised upon Section 35A fails as a matter of law.

b.      Paragraph 22 of the Mortgage

Even though Count IV is captioned "Mass Gen. Laws c. 244 § 35A," to the extent that Plaintiffs additionally attempt a challenge pursuant to Paragraph 22 of the Mortgage, this fails as a matter of law as well.  In Paragraphs 59-60 of the Complaint, Plaintiffs appear to again contest that it was not the "Lender" to send the notice in question, which fails for the same reasons as already stated *supra* concerning Count I.  The only other challenge that Plaintiffs appear to assert is in Paragraph 62 of the Complaint, in which Plaintiffs, citing to a recent decision of the Supreme Judicial Court in *Pinti v. Emigrant Mortg. Co.*, 472 Mass. 226, (2015), perhaps allege that the February 24, 2009 notice, *see* Ex. E., did not comply with Paragraph 22 of the Mortgage because of the particular wording that it employed to inform Plaintiffs of their ability to bring a

16

legal challenge to foreclosure.  They state that this notice had to inform Plaintiffs "of their right

to bring a court action," whereas the operative notice in question instead (at the end of the first

page) used the phrase "right to assert in the foreclosure proceeding."

What Plaintiffs obscure, though, and why *Pinti* is not applicable to this action, is that the

Supreme Judicial Court found expressly in *Pinti* that its holding, that the notice of default

provisions of Paragraph 22 would be considered part of the statutory power of sale, would have

"***prospective effect only***" and "apply to mortgage foreclosure sales . . . for which the notice of

default required by paragraph 22 is sent after the date of this opinion [July 17, 2015]."  472

Mass. at 243 (emphasis added).[16]  In a recent reported decision, *Aurora Loan Servs., LLC v.*

*Murphy*, the Appeals Court confirmed the prospective-only application of *Pinti*, with the solitary

exception for claims that were pending on appeal at the time of the *Pinti* decision, raising the

same challenge.  No. 13-P-874, -- N.E.3d --, 2015 WL 8484663, at *4 (Mass.App.Ct. Dec. 11,

2015).[17]  In this action, the notice at issue is dated February 24, 2009, or over ***six years*** prior to

the July 17, 2015 decision date of *Pinti*.  Because *Pinti* is inapplicable, Plaintiffs' challenge

centered on Paragraph 22 fails as a matter of law.

Even beyond the prospective-only character of *Pinti*, though, a further critical distinction

is that unlike in *Pinti*, ***these*** Plaintiffs actually ***did*** raise a challenge prior to foreclosure.  In *Pinti*,

the Supreme Judicial Court determined that "Massachusetts mortgagors, including the plaintiffs,

could be misled into thinking that they had no need to initiate a preforeclosure action against the

mortgagee but could wait to advance a challenge or defense to foreclosure as a response to the

lawsuit initiated by the mortgagee . . . ."  472 Mass. at 237.  In *Pinti*, a foreclosure sale had

---

[16] *See also ClearVue Opportunity XV, LLC v. Sheehan*, No. 14-ADMS-40015, 2015 WL 5098658, at *12 n.28 (Mass.App.Div. Aug. 24, 2015) (noting "that the holding in *Pinti* is explicitly prospective in its application").
[17] *C.f. Lindsay v. Wells Fargo Bank, N.A.*, Civ. No. 12-11714-PBS, 2013 WL 5010977, at *1 (D.Mass. Sept. 11, 2013) (likewise recognizing distinction from actions pending on appeal at time of prospective-only ruling).

already taken place on August 9, 2012, with a foreclosure deed dated September 10, 2012, well

before the time that the Plaintiffs filed their action in Superior Court on January 31, 2013.  *See*

*id.* at 229.  The theory of the majority opinion was that if a mortgagor, such as Ms. Pinti, did not

know she could bring a court action to challenge the process, a mortgagee might exercise the

statutory power of sale without a court proceeding (as would be required, by contrast, in a

judicial foreclosure state) in which the mortgagor might raise these defenses.  *See id.* at 237-38.

Here, though, Plaintiffs actually ***did*** file such a claim prior to the foreclosure in an action

earlier this year, with Civil Action No. 1:15-cv-13244-FDS.  This Court may take judicial notice

of this related action.  *See Rodi v. S. New England School of Law*, 389 F.3d 5, 18-19 (1st Cir.

2004) (citing, *e.g.*, *Kowalski v. Gagne*, 914 F.2d 299, 305 (1st Cir. 1990)).  The Complaint in

that earlier action was dated June 30, 2015, namely *before* the foreclosure sale was scheduled for

August 4, 2015.  Plaintiffs clearly knew full well, and prior to foreclosure, that they had the

ability to bring a court action to challenge the foreclosure sale.  For unknown reasons, however,

and facing a Rule 12(b)(6) motion, Plaintiffs decided to voluntarily dismiss that action.  Plaintiffs

cannot assert that they were caused any harm when they by definition exercised their very "right

to bring a court action to assert . . . defense[s] . . . to acceleration and sale."  *See Cades v. Bank of

N.Y. Mellon*, Civ. No. 13-12216-RGS, 2013 WL 6212592, at *3 (D.Mass. Nov. 29, 2013) ("The

best evidence that the substitution is immaterial and that the language of the . . . Notice served its

purpose is the fact that [Plaintiff] has challenged the foreclosure by bringing this lawsuit.").

> 5.   Plaintiffs cannot contend that an affidavit pursuant to G.L. c. 244, §§ 35B & 35C was never filed when it is a matter of public record with the Land Court Registry District that Plaintiffs are incorrect.

In Counts V and VI of the Complaint, pursuant to G.L. c. 244, §§ 35B & 35C, Plaintiffs

contend that the foreclosure sale is void because an affidavit certifying compliance with Sections

35B and 35C was supposedly not recorded.  *See* Compl. ¶¶ 65, 69.  The primary reason why these claims are not only implausible, but also troubling, is that it is a matter of public record that this Affidavit *was* filed with the Registry District as Document 1,293,757.  *See* Fed.R.Civ.P. 11(b)(3).  This Affidavit is attached as Exhibit I to this brief.

    In addition to the supposed factual basis for these Counts being untrue, Plaintiffs' claims are moreover incorrect as a matter of law.  For one, neither Section 35B nor 35C is a part of the statutory power of sale.  *C.f. Schumacher*, 467 Mass. at 429-31 (holding Section 35A not part of statutory power of sale).  For another, Section 35B could not apply as a matter of law, because at the time the Section 35A notice was sent (on February 24, 2009), Section 35B was not even in effect, and it is the timing of the Section 35A notice that triggers the applicability of Section 35B at a threshold level. *See Lewis v. Wells Fargo Bank, N.A.*, Civ. No. 13-11896-RWZ, 2014 WL 1429684, at *2 (D.Mass. Apr. 14, 2014) (citing 2012 Mass. Acts ch. 194);  *Enfeld v. Rockland Trust Co.*, No. 14-P-453, 2015 WL 522658, at *1 (Mass.App.Ct. Jan. 30, 2015) (Rule 1:28 Decision).  Section 35B only applies to borrowers "receiving notice under section 35A of chapter 244 of the General Laws after [August 3, 2012]."  2012 Mass. Acts ch. 194, § 7.  In addition, G.L. c. 244, § 35B by its plain terms only applies to "certain mortgage loans," *see id.* (a), (b), which are defined for instance as such mortgage loans as loans having an introductory interest rate for 3 years or less, or loans with interest-only payments.  *See* G.L. c. 244, § 35B(a).  Since the Note on its face, *see* Ex. B, had no interest-only period and was an adjustable rate loan with a *5*-year introductory period, and because Plaintiffs plead no facts to show how any other definition of certain mortgage loan would apply, this provides additional grounds to find Section 35B wholly inapplicable.  Neither Count V nor VI is plausible either.[18]

---

[18] To reiterate, Count VII for Quiet Title is solely derivative of the preceding Counts and should be dismissed because those earlier Counts lack merit, as detailed throughout this Memorandum.

> 6.     Plaintiff Laurie Anderson's claims should specifically be dismissed for lack of standing, since she no longer has any interest in the Property.

Lastly, while the entire action should be dismissed for the reasons as already stated, there are further grounds still why any claims brought by Plaintiff Laurie Anderson specifically should be dismissed for lack of standing pursuant to Fed.R.Civ.P. 12(b)(1):  she no longer has any interest in the Property.  "No principle is more fundamental to the judiciary's proper role in our system of government than the constitutional limitation of federal-court jurisdiction to actual cases or controversies."  *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1146 (2013) (quotation omitted).  "To establish Article III standing, an injury must be 'concrete, particularized, and actual or imminent;  fairly traceable to the challenged action;  and redressable by a favorable ruling."  *Id.* at 1147 (quotation omitted).  When plaintiffs sue to determine property rights, they accordingly "must show they had an individual interest in the property rights," and otherwise their complaint must be dismissed for "lack [of] standing because they failed to show a *personal* injury."  *Bingham v. Mass.*, 616 F.3d 1, 5-6 (1st Cir. 2010) (emphasis in original).  The insurmountable obstacle for Plaintiff Laurie Anderson's claims particularly, therefore, is that as the Quitclaim Deed attached as Exhibit H to this brief makes transparent, Laurie Anderson, as part of her divorce agreement with George Anderson, conveyed whatever interest she might have had in the Property to George.  Because it is a matter of public record that regardless of the state of the foreclosure process, Laurie Anderson would have no interest in the Property in any event, her claims should be dismissed for this alternative reason as well.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Defendants request that their Motion be granted, this action be dismissed with prejudice, and this Court grant such other and further relief as is proper and just.

Respectfully submitted,

DEFENDANTS
NATIONSTAR MORTGAGE LLC and
CAPITAL ONE, N.A.

By their attorneys,

　　　　　/s/ Matthew A. Gens
Meredith A. Swisher, Esq. (BBO No. 646866)
Matthew A. Gens, Esq. (BBO No. 675393)
BERNKOPF GOODMAN LLP
Two Seaport Lane, 9th Floor
Boston, MA  02210
Tel: (617) 790-3000
Fax: (617) 790-3300
mswisher@bg-llp.com
mgens@bg-llp.com

Dated:  December 23, 2015

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent

electronically to the registered participants as identified on the Notice of Electronic Filing (NEF)

or sent by first-class mail to any persons indicated as non-registered participants on this date.

Signed under the pains and penalties of perjury this 23rd day of December, 2015.

　　　　　*/s/ Matthew A. Gens*

663976 v1/38755/217